UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 07-40-P-H |
| | ) | |
| SEAN CROTO, | ) | |
| | ) | |
| Defendant | ) | |

*MEMORANDUM DECISION ON MOTION FOR FRANKS HEARING
AND RECOMMENDED DECISION ON MOTION TO SUPPRESS*

Defendant Sean Croto, charged with being a felon in possession of three firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), seeks to suppress evidence (the firearms in question) seized on February 26, 2007 pursuant to a search warrant issued the previous day by Justice Thomas Humphrey of the Maine Superior Court. *See* Indictment (Docket No. 1); Defendant's Motion To Suppress, etc. ("Motion") (Docket No. 22) at 1; Government's Opposition to Defendant's Motion To Suppress Evidence, etc. ("Opposition") (Docket No. 24) at 5. The defendant also implicitly seeks an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), which he cites for the proposition that the search-warrant affidavit omitted information material to the determination of probable cause. *See* Motion at 7. For the reasons that follow, I deny the defendant's request for a hearing and recommend that his motion to suppress be denied.

### I. Factual Backdrop

On February 25, 2007 Biddeford Police Department ("BPD") Detective Richard D. Gagne sought a warrant from the Maine District Court to search an apartment on the second floor of 81 Foss Street in Biddeford, Maine for firearms, bullets, gun powder, a gun case, a hunting vest, a firearm

1

receipt and gun boxes. *See* Affidavit and Request for Search Warrant ("Gagne Aff."), Attach. #1 to Motion, at [5]-[6], [10]. Gagne represented that he had probable cause to believe that the defendant was in violation of 15 M.R.S.A. § 393, *see id.* at [9], which prohibits a person who, *inter alia*, has been convicted of a crime in Maine that is punishable by imprisonment for a term of one year or more from owning, possessing or having under his or her control a firearm unless the person has obtained a permit, *see* 15 M.R.S.A. § 393(1)(A-1)(1).[1] He stated, *inter alia*, that:

1.  He had incorporated into his affidavit a criminal record of the defendant, who was born January 17, 1969 and whom Gagne had determined had been convicted in Maine on February 28, 1992 of aggravated trafficking or furnishing of scheduled drugs, a Class C crime, and on March 28, 1994 of aggravated assault, a Class B crime. *See* Gagne Aff. at [9].[2]

2.  The property to be searched was located on the second floor of 81 Foss Street in Biddeford, Maine. *See id.* at [10]. He described it as follows:

> The number 81 is on the front of the building, and also on the stockade fence. The building is white with four apartments. There are two apartments located at the front of the building and two apartments to the rear of the building. The apartment to be searched is located on the second floor. There is a front entry, and a rear entry. The front entry has a sign on the door, (Please Take Off Shoes), that leads into the living room. There is a door to the left. That door leads to the bedroom and [is] said to be locked, with junk in front of it. The other door to the second floor apartment is located at the rear of 81 Foss Street second floor. There are two doors on the second floor,

---

[1] Gagne mistakenly cited 15 M.R.S.A. § 393(2), which describes the process for a permit application, *see* 15 M.R.S.A. § 393(2); however, the affidavit makes clear he claimed probable cause to believe that the defendant was a prohibited person in possession of firearms, *see* Gagne Aff. at [9]. Such technical blunders do not undermine search-warrant affidavits, which "are normally drafted by nonlawyers in the midst and haste of a criminal investigation[.]" *United States v. Capozzi*, 347 F.3d 327, 333 (1st Cir. 2003) (citation and internal quotation marks omitted).

[2] The defendant obtained from the Maine District Court in Biddeford, as part of his counsel's request for "the entire search warrant file[,]" Motion at 1 n.1, a criminal record sheet that he has attached to his Motion, *see* Attach. #2 to *id.* at [8]-[16], which presumably is the criminal-record document to which Gagne refers in his affidavit. That document corroborates that the defendant was convicted in Maine on March 28, 1994 of aggravated assault, a Class B crime, *see id.* at [15], and indirectly corroborates that he was convicted of aggravated trafficking in Schedule Z drugs, a Class C crime, by way of a notation indicating that he was arrested on August 27, 1992 for violation of a term of probation imposed in connection with that charge, *see id.* at [10]-[11]. In Maine, Class B and C crimes are punishable by imprisonment for a term of one year or more. *See* 17-A M.R.S.A. § 1252(2)(B)-(C).

>    one for the rear apartment and one for the front apartment, the one to be searched. The
>    second floor door to be entered is the door closes[t] to Foss Street, and leads into a
>    shed. There is another door inside the shed[;] that door leads into the kitchen of the
>    second floor apartment.

*Id*. [3]

3. At approximately 3:04 p.m. on February 24, 2007 BPD officers Corey Dussault and Jeffrey Greene were dispatched to 7 Clifford Street in Biddeford to take a complaint from Michael Berube, born May 16, 1987, and Todd Sargent, born July 18, 1982. *See id*. Berube informed the officers that he was an acquaintance of a male residing at 81 Foss Street, second floor, whose name was Sean Croto, who was born on January 17, 1969 and who used to live at 42 Sullivan Street in Biddeford. *See id*.

4. Berube and Sargent told the officers that for the past several months they had been listening to Croto describe an anarchy plan he was attempting to put in place whereby he would attempt to take over the BPD and/or destroy it, blowing it up with Molotov cocktails. *See id*. at [10]-[11]. Sargent said he had heard Croto discussing the plan earlier that day at Croto's residence at 81 Foss Street in Biddeford; Sargent said Croto referred to feeling like an outcast and wanting to blow up the station. *See id*. at [11]. Sargent reported that Croto had shown him, that day, a .22 pistol and a rifle. *See id*. Sargent said that Croto also had samurai swords inside his residence. *See id*. Sargent reported that Croto had the loaded .22-caliber pistol, with a clip, inside his hunting vest and that he kept the guns next to his desk in the living room. *See id*. He said the defendant had shown him a rifle

---

[3] Gagne referred to, and presumably attached to his affidavit, City of Biddeford GIS Mapping and Parcel Data information for the block and lot in which 81 Foss Street was located; two pages of mapping data were among the materials the defendant's counsel obtained from the Maine District Court in Biddeford. *See* Gagne Aff. at [10], [15]-[16]; Motion at 1 n.1. Gagne also apparently attached to his affidavit photographs of the exterior of 81 Foss Street. *See* Attach. #2 to Motion at [1]-[7]. Although Gagne did not refer to photographs in his affidavit, *see generally* Gagne Aff., copies of photographs also were among the documents the defendant's counsel was provided when he requested the complete search-warrant file from the Maine District Court in Biddeford, *see* Motion at 1 n.1. For purposes of the instant motion, nothing turns on whether the GIS data or the photographs were attached to the affidavit presented to the issuing justice.

with a lever – an old-fashioned kind of rifle – that had a large brass bullet. *See id.*

5.     Berube and Sargent reported that Croto had told them and many other individuals that he planned on using Molotov cocktails and the guns to shoot up Biddeford City Hall and kidnap the mayor of Biddeford. *See id.* Sargent said that Croto had asked him that day if he (Sargent) wanted to be part of the action and attempt to overtake city government by blowing up the BPD and kidnapping the mayor, and Sargent had told Croto he did not want any part of that plan. *See id.*

6.     Berube said he knew Croto when Croto had lived at 42 Sullivan Street in Biddeford, Maine, and that Croto had several rifles and handguns. *See id.*

That day, February 25, 2007, Maine Superior Court Justice Humphrey issued a search warrant authorizing an unannounced daytime or nighttime search of the Foss Street residence. *See* Search Warrant, Attach. #1 to Motion at [7]-[8]; Motion at 1; Opposition at 5. The following day, BPD officers executed the warrant, seizing, among other things, three firearms and ammunition. *See* Motion at 1; Inventory, Attach. #1 to Motion, at [1]-[3].

Gagne omitted to state in his affidavit that (i) in response to a question why Sargent had waited so long to make his complaint against the defendant, Sargent told Gagne he never believed the defendant would follow through on his plans to blow up the police department or kidnap the mayor, but he was fed up with the defendant selling marijuana to his friends and other young people, and (ii) in response to the same question, Berube told Gagne that he also was fed up with the defendant selling marijuana to his friends, although he was more concerned about the defendant's plans. *See* Motion at 4; Opposition at 3.

## II. Discussion

The defendant contends that the firearms in question were seized in violation of his Fourth Amendment rights and are inadmissible as evidence against him inasmuch as (i) the Gagne Affidavit

failed to demonstrate probable cause for issuance of the warrant, (ii) the affidavit was so lacking in probable cause that any police reliance upon it was unreasonable, and (iii) the affidavit made no mention of the bias Berube and Sargent harbored against him. *See* Motion at 5. The government rejoins that (i) the warrant was buttressed by probable cause, (ii) even if it was not, the so-called *Leon* good-faith exception applies, and (iii) with respect to allegations of bias, the defendant makes an insufficient showing to warrant a *Franks* hearing. *See* Opposition at 6-17; *see also United States v. Leon*, 468 U.S. 897, 922-25 (1984). The government has the better of the argument.

### A. Probable Cause for Warrant

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005) (citation and internal quotation marks omitted). "In determining whether the nexus element is satisfied, a magistrate has to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 48-49 (citation and internal punctuation omitted). "Put differently, the application must give someone of 'reasonable caution' reason to believe that evidence of a crime will be found at the place to be searched." *Id.* at 49.

Both the issuing magistrate and a subsequent reviewing court look to "the totality of the circumstances indicated [within the four corners of] a supporting affidavit" to assess the existence *vel non* of probable cause, "[y]et such review cannot start from scratch." *United States v. Schaefer*, 87 F.3d 562, 565 (1st Cir. 1996) (citation and internal quotation marks omitted). "A reviewing court must give great deference to a magistrate's assessment of the facts and inferences supporting the affidavit . . ., reversing only if there is no substantial basis for concluding that probable cause

existed." *United States v. Sawyer,* 144 F.3d 191, 193 (1st Cir. 1998) (citation and internal punctuation omitted).

In the defendant's view, the Gagne Affidavit fails to establish probable cause inasmuch as it relies almost entirely on the uncorroborated statements of two sources, Berube and Sargent. *See* Motion at 5-6. Specifically, the defendant complains that:

1.  While Berube and Sargent stated that the defendant lived at 81 Foss Street, second floor, neither of them described what the building or apartment looked like or provided a phone number for the apartment or any other information supporting their contention that they had actually been there. *See id*. at 5. Nor did either of them describe the defendant. *See id*. at 5-6. Further, only Sargent said he had seen guns at 81 Foss Street. *See id.* at 6.

2.  There is no indication that police even attempted to verify Berube's or Sargent's information or that either source ever had provided reliable information in the past. *See id*. at 6 & n.2. The most that can be said is that Gagne confirmed the existence of an address at 81 Foss Street in Biddeford; the affidavit is devoid of verification that a second-floor apartment existed or that the defendant lived there – for example, that his name was listed on utilities at that location or that the owner or landlord or other residents of the building were contacted. *See id*. at 6. In the defendant's view, "[w]ithout verification, the search warrant might []as well be written for any location in Biddeford that Berube and Sargent chose to mention." *Id*.

Nonetheless, as the First Circuit has observed, an affiant need not necessarily assess (or otherwise vouch for) the credibility of informants to demonstrate probable cause for issuance of a warrant. *See, e.g., Schaefer*, 87 F.3d at 566 ("[A]n informant's tales need not invariably be buttressed by extensive encomia to his veracity or detailed discussions of the source of his knowledge. While an informant's truthfulness and basis of knowledge are highly relevant in determining the value of his

6

report, the [Supreme] Court has cautioned that these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case.") (citation and internal quotation marks omitted); *see also, e.g., United States v. Spinosa*, 982 F.2d 620, 626 (1st Cir. 1992) ("The affidavit must be viewed in its entirety, and must be given a common-sense and realistic, rather than a hypertechnical interpretation.") (citations and internal quotation marks omitted).

Informants' credibility can be established in multiple ways, including:

1. Consistency among independent reports. *See, e.g., Schaefer*, 87 F.3d at 566 ("Courts often have held that consistency between the reports of two independent informants helps to validate both accounts.").

2. Consistency with information provided by "ordinary citizens" (such as complaints by neighbors that an individual was cultivating marijuana) – a type of report that enjoys "special stature since information provided by ordinary citizens has particular value in the probable cause equation." *Id*.[4]

3. Self-authentication "through the very specificity and detail with which [an affidavit] relates the informant's first-hand description of the place to be searched[.]" *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996).

The Gagne Affidavit is not a model of clarity; it omits, for instance, to illuminate the source of its detailed account of the inside and outside of the defendant's apartment. *See generally* Gagne Aff. Nonetheless, a reviewing magistrate reasonably could have inferred that the source was either Berube

---

[4] "Historically, confidential informants have been treated as the least credible source of information about the commission of crimes not only because informants enjoy anonymity, but also because they are often criminals, drug addicts, or even pathological liars." *United States v. Taylor*, 774 F. Supp. 41, 42 (D. Me. 1991) (citation and internal quotation marks omitted). "Although indispensable, confidential informants are generally regarded as less reliable than ordinary citizens, victims, or law enforcement officers." *Id.* Nonetheless, the reliability of the reports even of confidential informants can be demonstrated to a reviewing magistrate in a number of possible ways. *See id.* at 42-43.

or Sargent – most likely the latter, who had told officers he had been in the defendant's apartment earlier that day. The source's description of the defendant's apartment, in turn, was sufficiently detailed and specific to be self-authenticating, permitting a reviewing magistrate to conclude there was a fair probability that the source had been in the apartment on the second floor of 81 Foss Street and that the apartment was in fact that of the defendant. For example, the source stated that the front entry had a sign on the door, "Please Take Off Shoes," and led into the living room and that there was a door to the left leading to the bedroom, said to be locked, with junk in front of it. *See id.* at [10]. In addition, Sargent described in some detail the nature and location within the apartment of the firearms he claimed to have been shown – for example, that the .22-caliber pistol and a clip were in the defendant's hunting vest, that the guns were kept next to his desk in the living room and that the rifle was an old-fashioned one with a lever and large brass bullet. *See id.* at [11]. That level of detail and specificity tended to make the report self-authenticating with respect to Sargent's presence in the apartment and the fact that the apartment was indeed that of the defendant.

What is more, Berube's report largely cross-corroborated that of Sargent regarding the alleged anarchy plot and other details. While only Sargent said he had seen guns inside the Foss Street apartment, Berube reported that the defendant had several rifles and handguns when he lived at a previous address, 42 Sullivan Street in Biddeford, Maine. *See id.* at [11]. This tended to bolster the likelihood that the defendant kept weapons at his current address.

Finally, despite the lack of any indication in the Gagne Affidavit that officers externally corroborated details of the Berube and Sargent complaints (for instance, via surveillance), the nature of the complaints themselves lent them inherent weight. Neither Berube nor Sargent was an anonymous tipster and, from all that appeared, neither had been charged with a crime or paid for any information. Both, instead, appeared to be ordinary citizens who stepped forward to report

concerning activity – a circumstance in which, even in the absence of a track record of reliability or external corroboration, a reviewing magistrate reasonably could have accorded their reports weight. *See, e.g., United States v. Scalia*, 993 F.2d 984, 987 (1st Cir. 1993) ("In the absence of a prior record of reliability, we have recognized that, where the informant was not a professional but a private citizen with no known criminal record or other criminal contacts, who came forward on his own, the informant's story may be more easily accepted. Since there is no evidence that the informant who came to MacMaster either had a criminal record, or was suspected of current criminal activity, a neutral judicial officer fairly could find that the informant was a 'private citizen' who volunteered the information to MacMaster.") (citations, italics and internal punctuation omitted).

In sum, the Gagne Affidavit established that (i) the defendant had been convicted of Class B and Class C crimes in Maine, (ii) as a result, he was prohibited from possessing firearms in the absence of a permit, (iii) there was a fair probability that he resided in a second-floor apartment at 81 Foss Street in Biddeford, and (iv) there was a fair probability that firearms would be found therein. This sufficed to confer probable cause for issuance of the requested warrant.

### B. *Leon* Good-Faith Exception

A finding that the warrant to search the defendant's apartment was supported by probable cause is dispositive of his motion to suppress. However, even assuming *arguendo* that there was no substantial basis for concluding that probable cause existed, I would reach the same result based on application of the *Leon* good-faith exception, pursuant to which "[e]vidence seized in violation of the Fourth Amendment is admissible in court if the government placed an objectively reasonable reliance on a neutral and detached magistrate judge's incorrect probable cause determination." *United States v. Crosby,* 106 F. Supp.2d 53, 58 (D. Me. 2000), *aff'd*, 24 Fed. Appx. 7 (1st Cir. 2001) (citation and

internal quotation marks omitted).

> As the defendant suggests, *see* Motion at 6-7, the *Leon* exception is itself subject to exceptions:
>
> There are four exclusions to the *Leon* good-faith exception: (1) when the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant is so facially deficient – i.e. in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.

*United States v. Owens*, 167 F.3d 739, 745 (1st Cir. 1999) (citation and internal punctuation omitted).

The defendant invokes the third of these exclusions, arguing that "[a]ny officer reviewing the affidavit would have realized that there was a complete lack of any verification of the information reported by Berube and Sargent." *See* Motion at 7. As noted above, an informant's reliability can be established by various means, including self-authentication, corroboration between or among independent reports, and the weight inherent in the nature of certain types of reports, such as complaints to the police by concerned citizens. *See, e.g.*, *Zayas-Diaz*, 95 F.3d at 111; *Schaefer*, 87 F.3d at 566; *Scalia*, 993 F.2d at 988 ("Corroboration may take various forms, . . . and we have never intimated that surveillance is mandatory."). While not externally corroborated, the Berube and Sargent reports, as presented in the Gagne Affidavit, contained sufficient indicia of reliability in the circumstances to have permitted a reviewing magistrate to have relied upon them as establishing probable cause for issuance of the warrant. Thus, the Gagne Affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

### C. *Franks* Hearing Request

Citing *Franks,* the defendant finally complains that the warrant on which officers relied to execute the search of his home on February 26, 2007 was defective because Gagne deliberately

withheld material facts from the issuing justice – namely, that Sargent and Berube explained that they had not reported the defendant's alleged plots until February 24, 2007 because that was the date on which they became fed up with him for selling marijuana to their friends. *See* Motion at 7. The defendant argues that this information evinced Sargent's and Berube's bias against him, undermined their credibility and should have been shared with the justice who issued the warrant. *See id*.

In *Franks* the Supreme Court held: "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56. A misstatement or omission must be material:"[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id*. at 171-72 (footnote omitted); *see also, e.g., United States v. Ippolito*, 774 F.2d 1482, 1486-87 & n.1 (9th Cir. 1985) (if a reasonable district judge could have denied the application if fully informed, the information is material; however, if omitted information or misstatement would have had no effect on issuance of warrant, it is immaterial).[5]

The defendant neglects to proffer evidence of any kind (apart from the warrant file obtained from the Maine District Court) in support of his *Franks* hearing request; however, the government acknowledges that Sargent and Berube did tell BPD officers that they had finally gone to the police

---

[5] The Supreme Court elaborated in *Franks*: "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false, and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

because they were fed up with the defendant selling drugs to their friends and other young people. *See* Opposition at 3. The government nonetheless argues, and I agree, that (i) the defendant falls short of making the requisite "substantial preliminary showing" that this information was omitted with intent to make the affidavit misleading or in reckless disregard of that possibility, and (ii) the omitted information in any event is immaterial to a finding of probable cause. *See id*. at 14-15.

As the government posits, the omitted information regarding Berube's and Sargent's reasons for making the complaint "would have in no way clarified, minimized or altered the facts that were set forth in the affidavit to establish probable cause to believe Croto was a felon in possession of firearms." *Id*. at 15. Nor do the statements establish the sort of bias that might have undermined Berube's and Sargent's credibility or their status as concerned-citizen witnesses. Instead, the statements tend to provide a plausible explanation why Berube and Sargent waited as long as they did to make their report and to show that they were concerned not only about the alleged plot and presence of firearms but also about other illegal and potentially harmful conduct on the defendant's part. As the government posits, the statements "[a]t best . . . exhibit a dislike for, or bias against, criminal activity and concerns for the well-being of young people in the community rather than any sort [] of bias against Croto himself." *Id*. at 16.

Inasmuch as the defendant fails (i) to make a substantial preliminary showing that the information was omitted with intent to make the affidavit misleading or in reckless disregard of that possibility or (ii) to demonstrate that the omitted information was in any event material to a finding of probable cause, I deny his request for a *Franks* hearing.

### III. Conclusion

For the foregoing reasons, I **DENY** the defendant's request for a *Franks* hearing and

recommend that his motion to suppress evidence be **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 23rd day of August, 2007.

/s/ David M. Cohen<br>David M. Cohen<br>United States Magistrate Judge